# Davis *v.* Kornman.

*Action by Injured Employee under Employer's Act.*

1. *Evidence; what inadmissible when injured employee sues.* Where an injured employee brings suit against his employer for damages for personal injuries, the measure of his damages is the loss which he has sustained by his injuries, and it is not permissible for him to show that he was industrious and worked steadily prior to his injury. Such testimony sheds no light on the issues involved, and its only effect is to create sympathy for the plaintiff and improperly increase his damages.

2. *Same; not permissible to show subsequent precautions against accident from same machine.*—It is not permissible in a suit for personal injuries caused by flying "studs" from a broken belt on a planing machine, to show that, subsequent to the accident, boards or protectors had been put up about the machine to protect the workmen from flying belts or studs.

3. *Same; not permissible to show that tightener had been removed from the machine prior to the accident.*—In such a suit, where the presence or absence of a tightener on the machine is not shown to have some causal connection with the running of the machine and the injury, it is error to allow a witness to testify that such a contrivance was on the machine originally, and had been removed prior to the accident.

4. *Same; testimony as to the ownership of property by the plaintiff not admissible.*—In a suit for personal injuries brought by an injured employee against his employer, it is not permissible for the plaintiff to testify that he owns no property of any kind.

5. *Same; witness may testify as to necessary precautions to protect operatives.*—In an action by an employee against his employer to recover damages for personal injuries sustained by him while employed in operating a machine in a planing

Vol. 141.

[Davis v. Kornman.]

mill, alleged to have been caused by reason of the negligence of the superintendent in providing for the machine a belt, fastened with what is known as "Blake Studs," which broke, where a witness testifies that it is dangerous to run a planer with belts fastened with "Blake Studs," he may be asked, "What are the proper precautions to take, to guard employees and men working by the planer, from being struck when you are using Blake studs?" and his reply, "It is according to the way you run the belts. Behind the machine, and on the sides of the belts, we have boards there to protect the belts," is competent as tending to show negligence in a person operating such planer without such protection.

6. *Same; what permissible to show negligence in person having superintendence.*—In such an action, when it has been shown that the plaintiff was injured by certain belt studs which broke out of a belt on a planing machine at which he was employed, it is competent for the purpose of showing negligence of the person having superintendence, for a witness who has testified that belts fastened with such studs sometimes broke, and he had known the studs to fly out and for one or two to strike other persons, to give the names of the other persons and state where they were struck.

7. *Same; same.*—In such an action, it is likewise permissible for a witness who has been injured at a different time by the same machine by which plaintiff was hurt, to state that at the time witness was injured, he was standing back of the machine, and handing lumber up to feed it, and one of the studs flew out and struck him on the thigh and hurt him, and that the superintendent saw the accident.

8. *Same; same.*—In such an action, a witness who has been injured by the same machine may be asked, "Are there any bruises or scars on your legs?" and he may state in reply, "There is a little place on my leg; that it was the end of the belt that struck me, and I do not think any of the rivets hit me; that when the belt broke, it slapped me and knocked my pants off, and I had on a lace shoe, and it tore the lacing out."

9. *Same; wages received by other operatives in mill immaterial.* In such a case, it is improper to allow a witness employed in a different capacity from the plaintiff, to state what wages he received in the same planing mill, or to state the scale of wages received there by the various employees. If such evidence is sought on the ground that the plaintiff, if not injured, might have been promoted to some higher position, it is

[Davis v. Kornman.]

purely speculative, and furnishes no basis for the admeasurement of damages.

10. *Assignments of error; when will not be considered.*—Where an assignment of error sets out the substance of a charge as appearing on a certain page of the transcript, and no such charge appears on that page, the fact that a charge which was intended to be reviewed, but which is not in substance the one specified in the assignment, appears on another page of the transcript, will not authorize the consideration of such assignment of error.

11. *Charge to jury; explanatory charges should be requested.* Charges which instruct the jury to find a verdict if they believe the facts hypothesized, without stating that they believe them from the evidence, are not, for such failure, erroneous, and the party apprehending injury therefrom, should ask explanatory charges.

12. *Same; what erroneous.*—In an action by an employee against his employer to recover damages for personal injuries sustained by him while employed in operating a machine in a planing mill, alleged to have been caused by reason of the negligence of the superintendent in providing for the machine a belt, fastened with what is known as "Blake studs," which broke, a charge which declares that if the person having superintendence, "knew that the belt could have been fastened by lacing, and that when laced, it was not dangerous when in use on the machine, and that it had previously proved to be dangerous when in use on said machine, when fastened together with studs," then such person was guilty of a negligent act, is erroneous, because it imputes negligence to such superintendent, on the ground that the belt had previously proven dangerous when fastened with studs, without hypothesizing knowledge on the part of such superintendent, or notice of the fact to him.

13. *Same; what properly refused.*—In such an action, where the complaint counts on the negligence of the superintendent in providing and using the particular belt fastened with Blake studs, a charge which instructs the jury that under this state of the pleadings "no recovery can be had thereunder on account of any defect that may have existed in the machinery or appliance, whether it consisted in the character of the studs used or the want of a protector, or any other defect in the appliances," is erroneous and properly refused.

14. *Approved appliances; when use of by employer, does not necessarily exempt from liability.*—While an employer is not required to use the best possible appliances to protect his

employees from danger, and while he may show, in order to rebut the charge of negligence on his part, that the appliances that he did use, were such as were adopted and used by many prudent persons engaged in the same business; yet such fact does not necessarily exempt the employer from liability; and a charge asserting such proposition, is erroneous and properly refused.

APPEAL from Mobile Circuit Court.

Tried before the Hon. WM. S. ANDERSON.

This was an action brought by the appellee, Kornman, against the appellant, Davis, to recover damages for personal injuries sustained while working for Davis in a planing mill, under the superintendence of one Taylor, There was verdict for the plaintiff and his damages were assessed at $1500.

The case was tried upon a single count, numbered 2, which avers "That on the 14th day of June, 1902, the defendant was engaged in operating a planer mill in manufacturing lumber in Mobile county, Ala., and employed a foreman and hands to operate said planer and plaintiff was employed as a hand under said foreman, whose name was D. B. Taylor, and who was entrusted at said time by defendant with superintendence of the operation of said planer and of the plaintiff and other hands; and the plaintiff at said time was a servant or employee in the service or business of the said defendant in connection with the operation of said planer mill and engaged in the discharge of his duties as such servant or employee, and plaintiff avers that on, to-wit, the date and time aforesaid, and while in the service of the defendant, and in the discharge of his duties as aforesaid in said county, the plaintiff was injured by the belt studs breaking out of the belt used in running or operating said planer and striking the plaintiff in the face, side and shoulder, whereby plaintiff was badly cut and suffered great pain and was permanently injured and his arm partially paralyzed and whereby he was put to great expense for medical attention and medicines in and about his said injuries, and sustained great loss of time and was permanently rendered less able to earn a livelihood; and the plaintiff avers that the said injuries were caused

by reason of the negligence of said foreman (Taylor) whilst in the exercise of such superintendence as aforesaid.

The evidence on which the case was tried and the facts relating to the rulings of the trial court on the evidence reviewed on the present appeal, are sufficiently set out in the opinion.

On page 66 of the transcript (and marked No. 2 by the court), is the following extract from the general charge of the trial judge: "If the man in the operation of the machinery finds out, although it may be used by others in the same line of business, that it is dangerous, why it would be his duty to take such means as he could to protect his employees against such danger."

On page 64 of the transcript (and marked No. 1 by the court), is the following extract from the general charge of the trial judge: "The question though, as to whether he is entitled to recover or not depends upon whether the evidence reasonably satisfies your minds that the injury was the proximate result of the negligence of the superintendent D. B. Taylor, while he was in the performance of his duties as such superintendent, while he was in the discharge of his duties."

The court, at the request of the plaintiff, gave the following written charges, to the giving of each of which the defendant separately excepted:  (2.)  "If the jury believe the undisputed evidence, and also that at the time the plaintiff was injured, he was in the discharge of his duties as employee of the defendant, and that defendant, through his foreman, Mr. D. B. Taylor, negligently failed to use due care and reasonable diligence to provide the planer machine with a good, proper and suitable belt with which to operate said machine, and that he negligently provided a belt with which to operate said machine, which he knew, or ought to have known, was unsafe and unsuitable for the purpose for which it was furnished, and that belt was unsafe and dangerous by reason of being fastened together with steel studs, and which studs would break or tear out of said belt on account of the weakness of the fastening, and that the belt hooks broke out of the belt and struck

plaintiff, and that defendant's injuries resulted from such negligence then you must find a verdict for the plaintiff and assess his damages." (3.) "If the jury believe the undisputed evidence in this case and that when plaintiff was injured he was in the discharge of his duties as employe of the defendant and at the time the belt (which broke and caused the injury to plaintiff) was fastened together and put upon the machine, Mr. D. B. Taylor was entrusted with superintendence in this regard, and that the belt was fastened together and put on the machine while said Taylor was in the exercise of such superintendence, and that said Taylor was negligent either in not fastening the belt together by lacing, or with covy hooks, or in not putting up a guard to protect the plaintiff from the danger of being struck, or in not instructing the plaintiff of the dangers connected with the use of the belt, and you further believe that the hooks broke out of the belt and struck plaintiff, then under the Employer's Liability Act of this State, the plaintiff would then be entitled to a verdict at your hands under the second count of the complaint." (7.) "If you believe from the evidence in this case, that Mr. D. B. Taylor, at the time the belt was fastened together with Blake studs and put on the planer machine, was entrusted with superintendence in that regard and was in the exercise of such superintendence, and that he knew at said time that the said belt could have been fastened together by lacing, and that when laced it was not dangerous when in use on said machine, and that it had previously proved to be dangerous on said machine when fastened together with studs, then said Taylor was guilty of a negligent act, for the legal consequences of which the law fastens liability upon the defendant." (10.) "If the fastening of the belt together with Blake studs was an unnecessary and unreasonably dangerous and an unsafe way of fastening said belt together, and that the belt could have been safely used on the machine had it been laced, or fastened in some other way neither the additional time that would be spent (if such be a fact) in fastening the belt together by lacing, or some other safe way, nor the fact (if it be so) that a belt laced or other-

[Davis v. Kornman.]

wise fastened would not be as durable, will not excuse the selection of such dangerous and unsafe fastenings instead of lacing or fastening in some other safe way." 13. "If you believe from the evidence that a Blake stud when used as a fastener in a belt, without protection, as was the belt in this case, was not reasonably safe, as a means of such fastening, then it would be no excuse that other mills did the same thing."

The defendant requested the following written charges, which the court separately refused, and to which refusal he separately excepted:

(G). "The court charges the jury that the plaintiff relies for recovery upon only the second count of the complaint. This count complains of negligence on the part of defendants' superintendent and no recovery can be had thereunder on account of any defect that may have existed in the machinery or appliances whether it consisted of the character of the studs used or a want of a protector or any other defect in the appliances." (H). "An employer is not obliged to use the best possible appliances nor every possible device, to protect his employees from danger; if he uses appliances that are used, and deemed good and sufficient, by many prudent persons engaged in the same kind of business, and uses them in the same manner in which they are used under the same or similar circumstances by any prudent persons and an accident nevertheless occurs and an employee is injured, the employer is not liable to the employee for such injuries."

The rulings on the evidence and the charges given and refused are now assigned as error.

GREGORY L. & H. T. SMITH, for appellant.—In an action for personal injuries which does not result in death, it is not relevant to show what were the habits of the plaintiff as to working regularly, or whether he was industrious or the reverse.—*L. & N. R. R. Co. v. Wood*, 115 Ala. 526; *P. T. Co. v. Hulsey*, 115 Ala. 206.

We do not deny that accidents of the same character, occurring in the same manner, may show that something is wrong, but before such evidence can be permitted, it

must be shown that the conditions are the same, and this was not done.—*R. R. Co. v. Starr,* 112 Ala. 107.

Under the pleadings there could be no recovery for defects in the machinery, and as this was all the evidence could prove it should not have been received.—*Choote v. Sou. Ry. Co.,* 119 Ala. 615.

Under the pleadings in this case it was clearly immaterial whether the plaintiff had any property or not.

It is equally immaterial that boards were put up as a protection for the workmen using the machine after the accident. The evidence as to the scale of wages received by the other employees of the mill was clearly inadmissible, as a means for fixing the damages it was purely speculative. It is not the duty of the employer to protect the employee against every possible danger. *L. & N. R. R. v. Jones,* 83 Ala. 382.

CHARLES L. BROMBERG, JR., *contra.*—The appellee had the right to assume that when the belt was put on shortly before the accident under the direction of Mr. Taylor that it was safe to work next to it.—*G. P. R. R. v. Davis,* 92 Ala. 309; *Osborne v. Ala. S. & W. Co.,* 135 Ala. 571.

It is the imperative duty of the master to inform the servant of all latent defects and dangers incident to the service and instruct him as to avoidance.—*Holland v. T. C. I. & R. Co.,* 91 Ala. 452; *L. & N. R. R. v. Boland,* 96 Ala. 633.

It is the master's duty to provide reasonable precautions to guard his employees against danger.—*R. & D. R. R. Co. v. Hammond,* 93 Ala. 183.

Under the evidence the use of Blake studs in rapidly revolving belts without protectors was unreasonably dangerous, and was a wrong, pure and simple, and it can be none the less wrong and dangerous because it is done by other mills whether well regulated or not.—*K. C. M. & B. R. R. Co. v. Burton,* 97 Ala. 252; *Warden v. L. & N. R. R. Co.,* 94 Ala. 278; *Andrews v. Bir. Min. R. R. Co.,* 99 Ala. 440-1.

HARALSON, J.—The plaintiff, William Kornman, brought suit against the defendant, Matt L. Davis, to

recover damages for a personal injury received by him while in the employment of defendant. Before the submission of the cause to the jury he requestd that it be submitted to be tried alone on the second count in the complaint, abandoning all the other counts which was done. The second count and issue joined thereon, constitute the pleadings. The count alleged in substance, that on the 14th of June, 1902, the defendant was operating a planer mill in manufacturing lumber, and plaintiff and others were employed as hands to operate said mill, under one D. B. Taylor, who was engaged as foreman, entrusted by defendant with superintendence of the operation of said planer and of the plaintiff and other hands; that the plaintiff was injured by certain belt studs which broke out of the belt used in running and operating the plaiuer, and struck the plaintiff inflicting on him physical injuries, caused by reason of the negligence of said foreman while in the exercise of such superintendence.

It was shown, without conflict in evidence, that plaintiff was employed at the time in the defendant's mill as an assistant to the feeder at a planing machine, the belt of which revolved very rapidly over two pullies about five feet apart, and on the day of the accident, the feedway of the machine became choked, and the feeder stepped one side for the purpose of unchoking it. The evidence further tended to show, that the plaintiff stepped up from behind the feeder some two feet to the feeder's place, to assist in getting the machine unchoked, when the belt broke or the bolt or brads of the belt flew out and struck him; that the ends of the belt were fastened together by Blake belt studs, and the injury was caused by the studs which flew out and struck him, or he was injured by the end of the belt striking him.

There was dispute in the evidence as to whether the Blake belt studs were dangerous on account of their liability to fly out of the belt when it broke, and as to whether they were the best appliances for fastening the ends of the belt. It was also in dispute as to whether there ought to be protecting boards so adjusted to the machine as to prevent the studs, when they break and

fly out from striking the feeder and his assistant. The evidence tended to show that these protections were not attached to the machine when constructed, but when found, were put on by those who operated the machine. It was also further shown, that other persons besides plaintiff, had been injured in a similar manner, and that after his injury these protecting boards were put up.

While witnesses for the plaintiff were being examined, the plaintiff asked one of them, "Was plaintiff an industrious man or not?" "During that year, had he been idling his time away, or had he been working and industrious?" "While the plaintiff was working at the planer mill, did you know whether he worked steady?" Each of these questions was objected to, because it called for irrelevant and immaterial evidence. To the first question the witness replied, that he seemd to be an industrious man at the time he worked there, that he worked pretty steady, getting $1.25 a day.

To the second question, the reply was made, that when plaintiff could get work, he did it; he did not seem to be a lazy man, and to the third, the witness replied that the plaintiff was not very stout or able bodied to do heavy work, but was always trying to go ahead at something.

These questions and answers were improper. When the accident results in death it may be material to show the habits of the deceased for industry, for the purpose of throwing light on the injury as to what he might have earned for those entitled to his estate; but the question here, was not what the next of kin lost, the injured party not having been killed, but what he himself lost in consequence of the injuries sustained, and whether he was industrious or not; whether he was habitually an industrious man or not, and whether or not he had been industrious during the year of the accident, were inquiries immaterial to the injuries sustained, the only effect of which was to create sympathy for plaintiff and to improperly magnify his damages.—*L. & N. R. Co. v. Woods,* 115 Ala. 527.

II. Crabtree for plaintiff, testifying about this particular belt, stated that it had been running for a few days previous to the time it broke and struck plaintiff; that belts fastened in the same manner sometimes broke, and he had known the studs to fly out when the belt broke and for one or two of them to strike persons. The plaintiff enquired, "Who was it that was hit in this way?" An objection being overruled, the witness stated, "Robert Baker got hit on the leg, and Charles Malachi was struck in the eye."

The witness P. Crabtree stated that he worked in the mill, and was told that the belt that injured plaintiff was the one on the smallest machine. The plaintiff then asked him, "How far off from the belt were you when you got hurt?" He replied that he did not know, but was standing back of the machine, and handing up lumber to feed it. The plaintiff objected to the question as calling for irrelevant and immaterial matter. The witness stated that that was the same machine that he had heard of, in connection with plaintiff's injury. He was then asked by plaintiff, "Now what happened?" He replied that the belt broke and one of the rivets flew out and struck him on the thigh and hurt him, going through his pants and sticking in his flesh. To this question the defendant objected on the same grounds. The plaintiff then asked, "Did Mr. Taylor know of that?" and he replied that he saw it.

There was no error in allowing these questions. Their object was, to show that the machine was liable to injure persons standing near while operating it, and in the position the plaintiff was, when injured; and that it was negligence in Mr. Taylor, the superintendent, in charge of the machine and its operation, if he did not provide against these damages, particularly if he knew about them.

For the same purpose and reason, a similar question asked the witness, Smith, was proper. He was also asked, "Are there any bruises, or scars or anything on your leg," and he replied, "Yes there is a little place there." This question was objected to as being irrelevant and immaterial. He further stated that it was

the end of the belt that struck him, and he did not think any of the rivets hit him, and said, "When it broke it slapped me and knocked my pants off," and I had on a lace shoe, and it tore the lacing off," and that he would not say that any of the rivets struck him. Whether stricken by the belt or by the metal rivets, could make no difference in the admissibility of the evidence, as tending to show the character of the machine, and the damages attending its operation, bearing on the question of the negligence of the superintendent in operating it.

Referring to boards put up around the machine to protect the workmen from flying belt or studs, a witness for plaintiff was asked, "Is there any protection there,. to protect you from those flying studs, put there since the accident?" Both questions were objected to, as calling for irrelevant and immaterial matter, which objections were overruled. The first witness replied, "that such boards or protections had been put up since the accident," and the other, that "there is a board put up there since the accident." In this there was error. The evidence was incompetent.—*Going v. Alabama Steel & Wire Co.* (in MS.) 37 South 784.

A witness was asked by plaintiff, "Was there any contrivance on that machine originally, that was not on there when Mr. Kornman got hurt, and if so what was it?" The witness replied, "that there had been a little tightener which had been taken off." The defendant objcted to the question calling for the evidence, because irrelevant and immaterial, which objection was overruled. The objection was good. What the tightener had to do with the injury plaintiff receivd, does not appear. Its purpose was simply to tighten the band when it became loose and slipped. Its presence or absence does not appear to have had any causal connection with the running of the machine and the injury.

·The plaintiff being examined was asked by his counsel, "Have you any property at all?" He replied, he had not. The objection to the question for immateriality and irrelevancy ought to have been sustained.—*Postal T. C. Co. v. Hulsey,* 115 Ala. 194.

[Davis v. Kornman.]

One Seeley being examined by plaintiff, testified that he was a planer-mill foreman, and had been for fifteen years; that there was danger in the use of Blake studs, in that they are liable to break in two and fly out and strike a person; that they run over a small pulley, and are liable to break in the center at any time; that sometimes the pieces fly out and go with force, and at other times they do not, owing to the rapidity with which the belt runs; that sometimes they go to the floor and stop there; that the belt runs three thousand revolutions to the minute, and that if one of the studs hits the operator, they are liable to go through him, fifteen or twenty feet off. He was asked "What is the proper precaution to take, to guard the employes, and men working at the planer, from being struck, when you are using Blake studs?" The witness replied, that "It is according to the way you run the belts. Behind the machine, and on the side of the belts, we have boards there to protect the belt." The objection to the question, as calling for incompetent testimony, was properly overruled. The witness had shown that it was dangerous to run the machine without protectors, and the want of them, was evidence tending to show negligence on the part of the person charged with its operation.

For like reason, the question propounded to Louis Jensen was allowable. He had testified that the Blake studs sometimes fly out very hard, but were not always dangerous; that to prevent this a protector can be put up behind the machine.

The question on the cross, to defendant's witness, Cheasman, asking him to tell the wages he got in the mill, was improperly admitted. What wages the witness was receiving did not tend to show what wages plaintiff, in a different employment or position in the mill, ought to be allowed for the time he was kept from work by the accident. The same is true of those questions propounded to witnesses calling for a scale of wages that the employes in the diffreent positions in the mill were getting. If the evidence was sought on the theory, that if the plaintiff had not been injured, he might have been promoted to some higher position in the mill, it

was speculative, and could not furnish a basis for the admeasurement of damages.—*Nave v. A. G. S. R. Co.,* 96 Ala. 264.

Assignment of error 24 is, "The court erred in charging the jury, of its own motion, in substance, that if a person finds that a thing he is doing is dangerous, he must discontinue its use or make it safe (Record, p. 69)." On page 69 of the record, no such charge appears. Nor does such charge appear elsewhere in the transcript. What was intended to be assigned as error, no doubt, was that part of the oral charge which we have marked No. 2 on the margin on page 66 of the transcript, but it is not in substance the one specified in assignment of error 24, which assignment we cannot, therefore, consider.

The same thing is true of assignment of error 25. That assignment refers to the charge, assigned as erroneous, appearing on p. 69 of transcript, and no such charge there appears. There is a charge on p. 64, which we numbered 1, on the margin, which is probably the one referred to, but it is materially different, and we do not, therefore, treat of this assignment.

Charges, numbered 2 and 3, given for plaintiff, are criticised because they instruct the jury, that they must find for the plaintiff if they believe the facts hypothesized without stating that they should believe them from the evidence. This objection is unavailing. If the defendant apprehended injury from this form, an explanatory charge should have been asked.—*Hall v. Posey,* 79 Ala. 84.

Charge 7 was bad. It imputed negligence to Taylor in not lacing the band, upon the ground that it had previously proved to be dangerous when fastened together with studs, without hypothesizing a knowledge of Taylor or notice to him of such facts.

When referred to the evidence, we discover no error in the 10th and 13th charges for plaintiff.

Plaintiff relied on the second count for recovery, basing the right to recovery on account of the negligence of the superintendent in providing and using the particular belt, fastened with Blake studs, It is not a count

[Southern Ry. Co. v. Mayor and Aldermen City of Florence, *et al.*]

for recovery for defects in the machinery or appliances, and no recovery was sought for these, as is supposed, disconnected with the alleged negligence of the superintendent in supplying and using this sort of a belt. There was no error in refusing to give charge G requested by defendant.—*L. & N. R. Co. v. Jones,* 83 Ala. 381, 382; *L. & N. R. Co. v. Bouldin,* 110 Ala. 185.

While it is true that an employer is not required to use the best possible appliances, to protect his employes from danger, and while he may show, in order to rebut the charge of negligence on his part, that the appliances that he did use were such as were adopted and used by many prudent persons engaged in the same kind of business, yet such evidence does not exempt the employer from liability. Prudent persons may do imprudent things, and may fail to use proper appliances for the safety of its employes. Charge H, for defendant, was properly refused.

Reversed and remanded.

McCLELLAN, C. J., and DOWDELL and DENSON, J.J., concurring.